[Civil No. 1462.  Filed December 11, 1915.]

[153 Pac. 455.]

## GEORGE WEBSTER, B. F. BILLINGSLEY and J. H. T. COSPER, Appellants, v. JAMES V. PARKS, Appellee.

1. COUNTIES—FISCAL MANAGEMENT — REMEDIES OF TAXPAYERS — GOOD FAITH OF BOARD.—Under Civil Code of 1901, paragraph 955, providing that when supervisors without authority of law order money paid from the county treasury, they or the party in whose favor the order is made shall be responsible for the money and a penalty of 20 per cent, it is immaterial that the board acted, in so paying out money, in a judicial matter, or that its members were acting in good faith; the only requisite to recovery being that the money shall have been paid "without authority of law."

2. CONSTITUTIONAL LAW—POWERS OF COURTS—CONTROL OF LEGISLATURE. That a decision compelled by provisions of a statute is harsh does not affect the obligation of the court to render it, the remedy being with the legislature.

3. COUNTIES—OFFICERS—CLERK OF BOARD OF SUPERVISORS—ADDITIONAL COMPENSATION—"PAYMENT WITHOUT AUTHORITY OF LAW."—Under Laws of 1905, chapter 11, providing that county officers shall receive the statutory compensation and no other, Civil Code of 1901, paragraph 2626, fixing a definite salary for the clerk of the board of supervisors, Civil Code of 1901, paragraph 3882, providing that the board of supervisors shall cause a true copy of the assessment-roll to be made and styled a duplicate assessment-roll, and Civil Code of 1901, paragraph 970, providing that the clerk of the board must perform all duties required by law or any rule or order of the board, the granting of additional compensation to the clerk for preparing a duplicate assessment-roll was a payment of money without authority of law, for which the taxpayer can recover.

4. COUNTIES—OFFICERS—CLERK OF SUPERVISORS—ADDITIONAL COMPENSATION—RECOVERY—DEFENSES—PLEADING.—Where it appeared that money was illegally paid as additional compensation to the clerk of the board of supervisors for preparing a duplicate assessment-roll, the fact that he was acting as agent in the collection for another who actually prepared the roll, if not pleaded, cannot be offered in evidence, where the answer was a demurrer and general denial.

5. COUNTIES — PUBLIC BUILDINGS — CONSTRUCTION — COMPENSATION OF ARCHITECT.—Under Civil Code of 1901, paragraph 3560, providing that the board of supervisors shall secure plans and specifications for county buildings and advertise for same, stating the amount of premium to be awarded to the architect, paragraph 3561, providing

that before an award of a premium to the architect shall be made the board shall require of him a bond upon certain conditions, and paragraph 3562, providing that all contracts entered into in violation of the last section are null and void, the payment to the architect of the premium before requiring a bond of him is a mere irregularity insufficient to show a payment in violation of law, so that the taxpayer cannot recover therefor.

6. COUNTIES—FISCAL MANAGEMENT — REMEDIES OF TAXPAYERS — MERE IRREGULARITIES—"PAYMENT WITHOUT AUTHORITY OF LAW."—Civil Code of 1901, paragraph 955, providing that the board of supervisors shall be liable for amounts paid out without authority of law and for a penalty thereon of 20 per cent, should not be applied to cases where money is paid out due to a mere irregularity which causes no injury to the county or the taxpayers.

[As to effect of allowance of invalid claims, see note in 55 **Am. St. Rep.** 208.]

7. COUNTIES—FISCAL MANAGEMENT—CONVENTIONS — EXPENSES — POWERS OF BOARD.—It is beyond the power of the board of supervisors to pay the expenses of a representative to a good roads convention, in spite of Civil Code of 1901, paragraph 1171, subdivisions 9 and 10, making county charges all contingent expenses necessarily incurred for the benefit of the county, and all sums directed to be raised and paid by law, and paragraph 959, subdivision 3, giving the board power to make contracts necessary to the exercise of its powers, and money so paid may be recovered on suit of a taxpayer under Civil Code of 1901, paragraph 955, providing that moneys paid out by the board of supervisors without authority of law, together with 20 per cent penalty thereon, are recoverable in the action of the taxpayer against the supervisors.

8. APPEAL AND ERROR — ASSIGNMENT OF CROSS-ERRORS — RIGHT TO ASSIGN.—Where the appellee filed no notice of appeal nor appeal bond, he was not entitled to allege cross-errors upon matters not connected with the part of the judgment appealed from.

APPEAL from a judgment of the Superior Court of the County of Cochise. Alfred C. Lockwood, Judge. Affirmed in part and in part modified and remanded.

Mr. L. Kearney and Mr. John W. Ross, for Appellants.

Mr. W. C. McFarland and Mr. H. E. Pickett, for Appellee.

ROSS, C. J.—The appellee, as a taxpayer of Greenlee county, instituted this suit against the appellants, members of the board of supervisors of said county, to recover certain

sums of money alleged to have been paid out by said board without authority of law.   He set forth in his complaint five causes of action:

First.   It is alleged that the tax rate for 1910 was $2.85 on each $100 valuation.   That the rate for the year 1911 was $1.80.   That the assessor of Greenlee county at the time of assessing the personal and real property of his county for the purposes of taxation for the year 1911 collected from property owners not owning real estate, taxes at the rate for 1910, to wit, $2.85 per $100; but, after the rate of 1911 was fixed at $1.80, the board refunded the difference to the taxpayers who had paid taxes for the year 1911 at the $2.85 rate.

Second.   That on October 3, 1911, the appellants paid to W. O. Wheatley the sum of $250 for making the duplicate assessment-roll of said Greenlee county for the year 1911, the said Wheatley being at the time the duly qualified and acting clerk of said board of supervisors.

Third.   That the appellants, on or about the twenty-seventh day of October, 1911, ordered paid to one E. C. Heck, an architect, as a premium for plans and specifications for a courthouse and jail for Greenlee county, the sum of $500. The said E. C. Heck not having at the time filed with said "'board of supervisors a good and sufficient bond with two sureties thereon in the penal sum of $5,000, . . . conditioned that within 60 days from the date of said bond he, the said E. C. Heck, on presentation to him, would enter into a contract containing such provisions and conditions as may be required by said defendants as a board of supervisors, and as further conditioned that he, the said E. C. Heck, would give such further bond to secure the faithful performance of such contract, with such securities as may be required of him, in the event that the defendants acting as a board of supervisors should within 60 days require said Heck to enter into such contract to erect said courthouse and jail at the price named in said advertisement, to be expended for such purpose.''

Fourth.   That the appellants on the third day of November, 1911, ordered the sum of $65 to be paid out of the county treasury of said Greenlee county upon the claim of one H. O. Tunis for expenses of said Tunis in attending the Arizona Good Roads Convention at Prescott on October 2, 1911.

There is no question raised in this court as to the fifth cause of action. Hence it is not set forth.

The appellants interposed a general demurrer and a general denial to each of said causes of action, and in addition, as to the first cause of action, answered that their act in refunding taxes was ratified, cured, legalized and made valid by chapter 22 of the Laws of 1913, entitled, "An act to legalize certain acts of the board of supervisors and the county treasurer of the county of Greenlee in refunding overpayments on personal property to the taxpayers thereof, for the year 1911."

The court directed a verdict upon the first cause of action in favor of appellants, and in the second, third and fourth causes of action in favor of appellee. Judgment was entered upon said verdict in favor of the appellee for the sums sued for, together with interest and penalties and 40 per cent thereof as an attorney's fee. Both the appellants and appellee, being dissatisfied with the judgment, filed motions for new trial, which motions were by the court overruled. The appellants gave notice of appeal and also filed a bond on appeal. The appellee did not give any notice of appeal, but has made cross-assignments of error on the court's order directing a verdict in favor of appellants on the first cause of action.

It is the contention of the appellants on their assignments of error that the moneys directed by them, as the board of supervisors of Greenlee county, to be paid out of the funds of said county, were authorized by law, and that, if they were not authorized by law, in auditing, allowing and directing the payment of such sums of money the board was acting in a *quasi* judicial capacity within the scope of their authority and without corruption or malice, and in accordance to their honest convictions as to their duties.

The authority for bringing this suit by a taxpayer, as the appellee alleges himself to be, is found in paragraphs 955, 956 and 957 of the Revised Statutes of Arizona of 1901. We quote from paragraph 955:

" . . . That whenever any board of supervisors shall, without authority of law, order any money paid out of the county treasury for salary, fees, or for any other purpose, such supervisors and the party or parties in whose favor such order-

shall have been made, shall be responsible for all such sums of money and twenty per cent. additional thereon. . . . ''

Under the express terms of this statute, the fact that the board may have acted in a judicial manner, or that its members may have been honest and conscientious in their belief of their right to pay out the sums of money charged, cannot in the least affect their liability for money paid out ''without authority of law.'' If the members of the board would avoid personal responsibility for salary, fees or other sums of money paid out by them, they must ascertain if such payments are for a purpose authorized by some statute or law of the state. Good faith and honesty of purpose on their part are no defense to a lawsuit to recover moneys paid out without the law's sanction. *Avery* v. *Pima County,* 7 Ariz. 26, 60 Pac. 702.

The announcement of this rule may seem harsh, but we find it in the legislative act, and, of course, are bound by it.

It remains for us to determine whether the sums of money sued for by the appellee were paid out by the appellants with authority of law or ''without authority of law.'' If the latter, the judgment must be affirmed, even though the sums were paid out for a most laudable purpose and with beneficial results to the county.

When the sum of $250 was paid to Wheatley for making a duplicate assessment-roll, he was the duly qualified and acting clerk of the board of supervisors of the county, and the law at that time provided for him a fixed and definite salary. Paragraph 2626, Revised Statutes of 1901. The law at that time further provided, in paragraph 2609, as amended by chapter 11 of the Laws of 1905, that ''county officers shall receive such compensation as is provided hereafter and none other. . . . ''

One of the duties imposed upon the board of supervisors is that it ''shall cause a true copy of said assessment-roll to be made, to be styled a 'duplicate assessment-roll.' '' Paragraph 3882, Revised Statutes of 1901.

Paragraph 970 of the Revised Statutes of 1901 prescribes the duties of the clerk of the board. Among others, he must ''record all of the proceedings of the board, . . . '' and ''perform all other duties required by law or any rule or order of the board.''

We gather from these provisions of the statute that it was the evident purpose of the law that the clerk should do whatever clerical work was necessary in connection with the performance by the board of supervisors of its duties, and that it was a part of the clerk's duty to make the duplicate assessment-roll for the salary fixed by law.

The appellants on the trial offered to prove that the work of making the duplicate assessment-roll was performed by one J. O. Bailer, an assistant clerk, and that the demand was filed in the name of Wheatley for Bailer's benefit, and that the money was actually paid to Bailer. This offer was rejected by the court, and we think properly so. The appellant's answer consisted of a demurrer and general denial. Under the issue thus formed, the offered evidence was not competent or relevant. Had the answer pleaded Wheatley's agency, the making of the demand against the county, and receiving the warrant therefor, as agent of Bailer, another and different question would have been presented, to wit, whether the records of the board could be overturned by oral evidence. Under the pleadings, however, that question is not before us.

The third cause of action is based upon an item of $500 paid to Architect Heck as a premium for plans and specifications for a courthouse and jail. Paragraph 3560 of the Revised Statutes of 1901 makes it the duty of the board of supervisors, when contemplating the construction of such buildings, to "advertise for plans and specifications in detail for said building or other structure, and to state in said advertisement the amount authorized by law or otherwise to be expended for the erection of said building or structure; and also the premium to be awarded to the architect whose plans and specifications for the same may be adopted." The complaint failing to negative the performance of this duty by the board of supervisors, we assume that it was done, and that Heck, in response to the advertisement, submitted to the board plans and specifications as provided in said paragraph.

We must assume from the record that the plans and specifications submitted by Heck were approved and accepted by the board of supervisors. The regularity of the proceedings of the board up to this point is not questioned. The board was acting upon a matter clearly within its jurisdiction and in strict conformity with the terms of the statute, and re-

ceived and accepted, on behalf of the county, valuable and technical information to guide it in the doing of important work for the county.

Complaint, however, is made that paragraphs 3561 and 3562 were violated by the board. Paragraph 3561 provides that:

"Whenever the plans and specifications of any architect shall be adopted, such . . . board of supervisors . . . shall, before any premium shall be awarded for such plans and specifications, require such architect to execute and file with . . . the board of supervisors . . . a good and sufficient bond, with two sufficient sureties thereto in the penal sum of five thousand dollars, to be approved by such . . . board of supervisors . . . and conditioned that within sixty days from the date of said bond, he will, on presentment to him, enter into a contract containing such provisions and conditions as may be required by such . . . board of supervisors. . . . "

It is required that this contract shall contain another condition, which, in effect, is that the architect will guarantee that the building or structure can be erected "at the price named in said advertisement to be expended for such purpose."

Paragraph 3562 is: "All contracts entered into by such . . . board of supervisors . . . in violation of the provisions of this act shall be null and void."

The law clearly authorized the appellants to pay a premium for plans and specifications. It says, however, that before this premium shall be "awarded," the architect shall execute and file with the board a bond with certain conditions. There is no allegation in the complaint, nor does the record show, that the county suffered any loss or damage by reason of the failure of the board to exact of the architect the bond mentioned. Presumably, the county received value and the board paid to the architect the premium advertised "to be awarded to the architect whose plans and specifications" were adopted.

We do not think that paragraph 955, *supra*, should be interpreted so as to penalize the board of supervisors for paying out this $500, even though a strict adherence to the letter of the law was not observed, in that a condition that might have been exacted from the architect was waived or inadvertently overlooked.

*Salt Lake County* v. *Clinton,* 39 Utah, 462, 117 Pac. 1075, was a suit instituted by the county against the county commissioners of said county to recover a large sum of money paid by the commissioners to a newspaper for publishing delinquent tax list. The laws of Utah required that the county printing and the publication of reports, notices and advertising should be awarded to the lowest competent bidder after advertisement for bids. The board, disregarding this provision, published the delinquent tax list in a newspaper of its own choice. Upon these facts the county instituted suit against the board of county commissioners to recover the amount paid to the newspaper, basing the right of recovery upon a statute which provided that "whenever any board of county commissioners shall, without authority of law, order any money paid as a salary, fee, or for any other purpose," recovery thereof may be had from the commissioners. A demurrer to the complaint in that case was sustained, and, among other things, the supreme court, in affirming the judgment, said:

"The purposes for which the county commissioners may appropriate and direct the payment of money out of the county revenues are designated by law, and when appropriated and ordered paid for one or more of the purposes so designated such appropriation and order is not without authority of law, though made erroneously and in an irregular manner. It is for money paid out by order of the board for some purpose not authorized by law—that is, paid out for a purpose which the law does not sanction under any circumstances—that the members of the board are personally liable."

The court quotes from *Paxton* v. *Baum,* 59 Miss. 531:

"If it is appropriated by the board of supervisors to some other object than is authorized by law, members are liable personally for it, unless they voted against such appropriation. It is for money appropriated to something for which the law does not permit it to be appropriated at all, in any way or under any circumstances, that members are personally liable. It is for a diversion of money from its legitimate objects, and not for appropriation to a proper object, although in an irregular or unauthorized manner, that liability is imposed on members personally. . . . If this is not the true in-

terpretation of the language mentioned (referring to the expression 'not authorized by law'), members of the boards of supervisors would be liable personally for every mistake or error of judgment or of information as to facts whereby money was appropriated even to proper objects, if not appropriated in strict accordance with law as to every circumstance attending it. Either members of the boards of supervisors are personally liable for every appropriation not made in strict conformity to law, or they are not liable except for a diversion of public money from authorized objects and its appropriation to such as are not authorized.''

It may be conceded that, if the architect had instituted suit against the county for his premium, in the absence of a showing that he had executed and filed the bond provided in paragraph 3561, his suit would fail, even though he had in all other respects fully performed all of the conditions of his contract. But we do not think that we are required to go to the length of making the supervisors refund this sum to the county, together with 20 per cent additional thereon and attorney's fee amounting to 40 per cent of the amount recovered, for a mere irregularity. It would be converting what the lawmakers intended to be a very salutary rule of law for the protection of the funds of the county into a severity of punishment so oppressive as to be avoided, if possible. We think the court committed error in entering judgment against the appellants on this count.

The fourth count is based upon an item of $65 paid by the board of supervisors to one H. O. Tunis for his expenses in attending the Arizona Good Roads Convention at Prescott. The complaint does not disclose whether Tunis was an officer of Greenlee county or not. Neither does the answer show that he was acting in the instant in an official capacity for the county. As far as the pleadings are concerned, Tunis may or may not have attended said Good Roads Convention in his official capacity and for the interest of the county. Some evidence was offered showing that he was the county surveyor. We know of no provisions in our laws, and our attention has not been directed to any law, that authorizes the board of supervisors to pay the expenses of anyone in attending the Good Roads Convention. Appellants rely upon

subdivisions 9 and 10 of section 1171 and subdivision 3 of section 959 of the Revised Statutes of 1901.

Subdivision 9 provides that "the contingent expenses necessarily incurred for the use and benefit of the county" are county charges. We do not think that the expenses of the county surveyor to the Good Roads Convention were necessarily incurred for the use and benefit of the county, or that such expenses were contemplated by the statute. If the law had imposed the duty upon the county surveyor to attend such convention, it might be contended that his expenses in doing so were a proper county charge under subdivision 9, but he has no such duty.

No reasonable construction of subdivisions 3 and 10 could be made to authorize such an expenditure.

The appellee has not taken the legal steps necessary to permit him to make cross-assignments of error. The appeal by the appellants is from the judgment against them. This is shown both by the notice of appeal and the bond on appeal. The judgment on the first cause of action, being in favor of the appellants, was not appealed from by them. Clearly, the judgment on that cause of action has not been brought here by the appellants, and the appellee has taken no step to have it here, as he gave no notice of appeal and filed no bond on appeal.

In *Minor* v. *Brought, ante,* p. 27, 148 Pac. 297, it was decided that an appeal without giving the statutory notice of appeal did not confer jurisdiction upon this court.

3 C. J. 1403, says: "Cross-errors can be assigned or predicated only upon questions presented in the lower court or rulings of the latter which arise out of or are connected with the judgment upon which the appellant bases his appeal."

The court erred in giving judgment to the appellee on the third cause of action for the premium paid to the architect.

The cause is remanded to the court below, with directions to modify the judgment in accordance with this opinion and to render judgment in favor of the appellee on the second and fourth causes of action.

FRANKLIN and CUNNINGHAM, JJ., concur.