NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

DEANNA LELAND,
*Plaintiff/Appellant*,

*v.*

AUTO NATION HONDA CHANDLER, et al.,
*Defendants/Appellees*.

No. 1 CA-CV 19-0133
FILED 1-9-2020

Appeal from the Superior Court in Maricopa County
No.  CV2016-096139
The Honorable David M. Talamante, Judge, *Retired*

**AFFIRMED**

COUNSEL

Goldberg & Osborne, LLP, Phoenix
By Ryan Lamb
*Counsel for Plaintiff/Appellant*

Stinson, LLP, Phoenix
By Lonnie J. Williams, Jr., Carrie M. Francis
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Judge Diane M. Johnsen delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge James B. Morse Jr. joined.

---

**J O H N S E N**, Judge:

¶1         Deanna Leland appeals the judgment entered upon a jury verdict in favor of AutoNation Honda Chandler ("AutoNation") and others in her personal-injury case.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2         Leland, Leland's mother, and Leland's sister, Wendy Navarro, went to an AutoNation dealership to shop for a car.[1]  Because Leland's mother had trouble walking, an AutoNation sales associate, Elmer Orellana, drove the group around the car lot in one of the dealership's four golf carts.  Leland's mother sat in the front passenger seat and Navarro and Leland sat, unrestrained, in the cart's rear seat, which faced backward.  After slowing the cart to allow the group to view some cars more closely, Orellana began to accelerate and Leland fell off the cart and onto the pavement, striking her head and sustaining injuries.  Orellana contacted his supervisor, John Salazar, who called paramedics.  Leland sued AutoNation, Orellana and others, alleging Orellana's negligence, imputed to AutoNation through *respondeat superior*, caused her to be thrown from the golf cart and injured.

¶3         Before trial, Leland moved *in limine* to preclude all evidence of her four prior felony convictions.  The superior court denied the motion but ruled the defendants could advise the jury only "that Plaintiff ha[d] a felony conviction and of her release date from prison."  Nonetheless, Leland's counsel opted to "draw the sting" by preemptively questioning Leland about all of her convictions during direct examination.  On cross-examination, AutoNation's counsel further questioned Leland about the

---

[1]         "[O]n appeal from a judgment entered on a jury verdict, this court must view the evidence in a light most favorable to the prevailing party and must give that party all the reasonable inferences arising from that favorable view of the evidence." *Frazier v. Sw. Sav. & Loan Ass'n*, 134 Ariz. 12, 14 (App. 1982).

nature of her four convictions (one count of shoplifting, two counts of solicitation to commit shoplifting and one count of possession of drug paraphernalia).

¶4 Later in the trial, AutoNation offered in evidence photographs of golf carts it uses to drive customers around its lot. Leland objected, citing lack of foundation and arguing no witness had testified that any of the photographs depicted the golf cart involved in the incident. The superior court admitted the photographs. At the close of evidence, the superior court declined Leland's request for a jury instruction on spoliation of evidence regarding the golf cart from which she fell, finding Leland had not shown the cart was destroyed or otherwise unavailable for inspection.

¶5 The jury returned a unanimous verdict for AutoNation and the superior court entered final judgment against Leland. Leland timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2020) and -2101(A)(1) (2020).[2]

## DISCUSSION

¶6 We review the superior court's rulings on admission of evidence, including prior convictions, for an abuse of discretion. *State v. Lopez*, 234 Ariz. 465, 469, ¶ 19 (App. 2014) (evidence); *State v. Beasley*, 205 Ariz. 334, 338, ¶ 19 (App. 2003) (prior convictions). We review the superior court's refusal to give a jury instruction for an abuse of discretion. *State v. Lewis*, 236 Ariz. 336, 346, ¶ 44 (App. 2014). We review questions of law *de novo*. *Lopez*, 234 Ariz. at 469, ¶ 19.

### A. Admission of Leland's Prior Felony Conviction.

¶7 Leland argues the superior court erred by allowing evidence of her four prior felony convictions because any probative value of the convictions was substantially outweighed by unfair prejudice. In addressing this contention, we note that the court ruled that AutoNation could offer evidence of just one conviction; the jury heard about all of them only because Leland's counsel opened the door to the issue by choosing to ask her about more than one felony on direct examination.

¶8 Arizona Rule of Evidence 609 governs the admissibility of prior convictions offered to impeach a witness's credibility. Rule 609(a)(1)

---

[2]    Absent material revision after the relevant date, we cite the current version of a statute or rule.

provides, in relevant part: "[F]or a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence: (A) must be admitted, subject to Rule 403, in a civil case . . . ."  In turn, Arizona Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  The superior court "has wide discretion" in deciding whether to admit evidence under Rule 609.  *Blankinship v. Duarte*, 137 Ariz. 217, 219 (App. 1983).

**¶9**　　　Here, the court acted well within its discretion when it chose to allow the jury to be told that Leland was convicted of a felony and of the date she was released from incarceration.  First, it is undisputed that Leland's convictions fell under Rule 609(a) because fewer than ten years had passed since her convictions or release from incarceration.  *See* Ariz. R. Evid. 609(b).  Thus, under Rule 609(a)(1)(A), the superior court was *required* to admit the evidence subject to Rule 403's balancing test.

**¶10**　　　Second, the danger of unfair prejudice from the jury's learning of a single felony conviction did not substantially outweigh the probative value of that conviction.  Evidence of Leland's prior felony was especially probative because her credibility was a central issue in the case.  *See Blankinship*, 137 Ariz. at 220 (importance of witness credibility a factor to consider in Rule 609 analysis).  Leland gave inconsistent accounts about the incident during her deposition and at trial concerning whether, for example, the golf cart was going around a corner at the time she fell off.  She also testified the rear seat of the golf cart lacked seatbelts, contradicting a photograph of one of the dealership's golf carts in evidence.  And Navarro was the only other known witness who saw Leland fall.  Whether AutoNation acted negligently therefore heavily depended on whether the jury believed Leland's testimony.  As such, evidence that she had a felony conviction was highly probative.

**¶11**　　　Leland argues, however, that unfair prejudice resulted even though the court sanitized the evidence because it "allowed the jury to speculate as to why she was convicted and when her convictions took place."  According to Leland, this left her little choice but to draw the sting by "delving into the details of each."

**¶12**　　　We are unpersuaded.  "Our case law has consistently approved of sanitization as a means of limiting prejudicial effect."  *State v. Montano*, 204 Ariz. 413, 426, ¶ 66 (2003).  The superior court soundly

exercised its discretion to admit evidence of only one of Leland's prior convictions. That Leland's counsel opted to question her not just about one felony, as the superior court had allowed, evinces a deliberate trial strategy, not unfair prejudice.

**¶13** Lastly, Leland's reliance on *Blankinship* is misplaced. We held there that the superior court erred by admitting evidence of the plaintiff's prior felony conviction under Rule 609. 137 Ariz. at 219-21. But that case is readily distinguishable because (1) the felony there was over ten years old and thus was subject to a much more stringent balancing test under Rule 609, (2) the superior court admitted the evidence for improper purposes, not to impeach the witness's credibility, and (3) the plaintiff's credibility was not a crucial issue in the case. *Id.* None of those circumstances applies here. Accordingly, we conclude the superior court did not abuse its discretion in ruling that AutoNation could offer evidence of one of Leland's prior felony convictions.

## B. Admission of the Golf Cart Photographs.

**¶14** Leland next argues the superior court erred by admitting the photographs of the golf carts because none of AutoNation's witnesses could identify which specific golf cart was involved in the incident. According to Leland, this caused prejudice because it gave the jury the impression "the golf cart Leland fell from was one of the golf carts depicted in those photos and had the safety features depicted in those photos."

**¶15** "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Ariz. R. Evid. 901(a). "For photographic or video evidence, the authenticating evidence frequently takes the form of witness testimony that the photograph or video accurately portrays whatever it purportedly depicts." *State v. Haight-Gyuro*, 218 Ariz. 356, 358, ¶ 9 (App. 2008). Applying those principles here, the appropriate inquiry is whether AutoNation provided "some evidence from which a jury could conclude" the photographs accurately depicted the golf cart at the time of the incident. *Id.* at 359, ¶ 10.

**¶16** AutoNation presented sufficient evidence from which the jury could conclude the golf carts in the photographs accurately represented the then-current condition of the cart from which Leland fell. *See id.* Although no one took a photograph of the specific golf cart on the day of the incident, AutoNation later photographed the dealership's carts

from different angles, and each photograph showed the rear seats were equipped with safety features such as seatbelts and handrails.

¶17   At trial, Orellana testified the photographs showed the golf carts he had driven at the dealership and accurately represented the golf cart he was driving at the time of the incident. He also testified there were no differences among any of the dealership's four golf carts. In addition, Salazar testified the photographs showed the exact golf carts used by the dealership in August 2014, that the safety features in the photographs were present when the incident occurred, and that the dealership had not acquired any other carts since the incident. Based on this testimony, the jury could reasonably conclude that the photographs accurately represented the golf cart involved in the incident.

¶18   Leland contends, however, that because AutoNation did not isolate the subject golf cart, "it is unknown what changes may have occurred to that golf cart before the photos were taken." But Salazar testified AutoNation made no changes to the carts since August 2014, and the jury had discretion as the factfinder to decide whether to credit his testimony. *See Harris v. Murch*, 18 Ariz. App. 466, 467 (1972) ("[T]he credibility of the witnesses and the weight to be given their testimony are matters peculiarly within the province of the jury.").

¶19   Although Leland argues *Henderson v. Breesman*, 77 Ariz. 256 (1954), should guide the result here, that case is inapposite. There, our supreme court affirmed the superior court's exclusion of a photograph of the plaintiff's car offered to show damages resulting from an accident, explaining "[t]here was evidence the car was not in the same condition as at the time of the accident" and deferring to the superior court's discretion. *Henderson*, 77 Ariz. at 262. In contrast, as noted, Salazar testified the dealership had made no changes to the golf carts since the date of Leland's fall. And, like the supreme court in *Henderson*, we must defer to the superior court's "sound discretion" in deciding to admit or exclude evidence. *See State v. Meraz*, 152 Ariz. 588, 589 (1987).

¶20   Last, Leland argues no foundation existed for admitting the photographs because Salazar could not testify to when they were taken. But Arizona law does not require a witness to identify the precise date a photograph was taken; the issue is whether evidence shows that the photograph accurately depicts its subject at the relevant time. *See State v. Lee*, 80 Ariz. 213, 214-15 (1956). In sum, we conclude the superior court did not abuse its discretion by admitting the photographs of the golf carts.

## C.    Refusal to Give Spoliation Jury Instruction.

**¶21**         Leland finally argues the superior court erred by refusing to give the jury a spoliation instruction because AutoNation failed to segregate or preserve the golf cart involved in the incident.  As a result, Leland argues this left the jury "with the impression that the photos accurately depicted the golf cart involved in the accident."

**¶22**         The superior court "must give a requested instruction if: (1) the evidence presented supports the instruction, (2) the instruction is proper under the law, and (3) the instruction pertains to an important issue, and the gist of the instruction is not given in any other instructions." *DeMontiney v. Desert Minor Convalescent Ctr., Inc.*, 144 Ariz. 6, 10 (1985).

**¶23**         Spoliation is defined as "[t]he intentional destruction of evidence" or "[t]he destruction, or the significant and meaningful alteration of a document or instrument." *McMurtry v. Weatherford Hotel, Inc.*, 231 Ariz. 244, 259, ¶ 51, n.15 (App. 2013) (citation omitted).  Litigants have a duty to preserve relevant evidence.  *Souza v. Fred Carries Contracts, Inc.*, 191 Ariz. 247, 250 (App. 1997).  "When a party breaches that duty . . . a trial court has discretion to impose sanctions," including "instruct[ing] the jury that it may infer that destroyed evidence would have been unfavorable to the position of the offending party." *McMurtry*, 231 Ariz. at 260, ¶ 51.  "In determining whether an adverse inference instruction is appropriate, the trial court has substantial discretion, but should consider any bad faith or intentional destruction and whether the loss of evidence prejudiced the party" requesting the instruction.  *Id.* (quotation omitted).

**¶24**         Here, a spoliation instruction was not appropriate because Leland offered no evidence that AutoNation destroyed, altered or otherwise failed to preserve the specific golf cart involved in the incident.  As explained, *supra* ¶ 17, Orellana and Salazar testified that the dealership's four golf carts were identical to each other and had not changed since August 2014.  Leland points to no evidence showing otherwise, and her assertions to the contrary amount to pure speculation.  *See DeMontiney*, 144 Ariz. at 9-10 (evidence must be presented to support requested jury instruction).

**¶25**         Further, the golf carts were available for Leland to inspect at any time, and she was free to argue or present her own evidence that the photographs of the golf carts did not accurately portray the cart from which she fell.  *See Strawberry Water Co. v. Paulsen*, 220 Ariz. 401, 411, ¶ 30 (App. 2008) (no abuse of discretion in denying spoliation instruction when

plaintiffs could challenge opponent's evidence by introducing their own, and remaining evidence was available for inspection). Therefore, we conclude the superior court did not abuse its discretion in declining to give a spoliation instruction.

**CONCLUSION**

**¶26** For the above reasons, we affirm the superior court's judgment. We award AutoNation its costs on appeal, upon compliance with Arizona Rule of Civil Appellate Procedure 21. *See* A.R.S. § 12-342(A) (2020).



AMY M. WOOD • Clerk of the Court
FILED: AA